Your honor, if you please the court. My name is Greg Robertson. I'm here on behalf of Big Ridge. I'm in an unenviable position. I stand before you today to talk to you about a decision you rendered about a year ago and what it says and what it means. Our first argument in this case is that the NLRB lacked jurisdiction to rehear the case after you dismissed it. We take that position advisedly. We understand that the merits of the case were not reached by this panel, but we believe that the law is interpreted by various courts and we believe that the statute requires that result. Several years ago, the Supreme Court issued a case called New Process Steel and in that case they found that the NLRB was improperly constituted and therefore didn't have jurisdiction to hear its cases. Some of those cases were on appeal to this court. Panels of this court chose to remand some of those cases back to the NLRB for reconsideration when it was properly constituted. This case came to the court with two questions. One, a constitutional question involving whether or not the president had properly used his recessed appointment powers and two, on the merits. The NLRB petitioned for enforcement as to both issues. The Supreme Court issued its null canning decision before this court issued an opinion in this case. In the null canning decision, the court found that the president had not properly appointed NLRB members and therefore that their decisions were invalid. In response, the NLRB If the board members who ruled originally were not properly appointed board members, then I would think that the hearing officer's ruling was still pending before the board once we vacated the board's original ruling. Why was the hearing officer's ruling not still pending? I mean, is your argument that an improperly constituted board can cause the NLRB to lose jurisdiction over a case? Because to me, that just doesn't seem plausible. But what do you think? Yes, Your Honor, I think you can. 10E of the statute says quite clearly that once the board transmits its record to the Court of Appeals, the Court of Appeals jurisdiction is exclusive at that point. It's not as if the case sat in front of the NLRB and null canning was never decided or you all didn't decide this case. The case was transmitted to this court in accordance with 10E. And 10E says the court has exclusive jurisdiction and its decision will be final. Our overall point here with respect to the statute is that the statute lays out a scheme, which may or may not quite honestly be fair in this instance, but it lays out a scheme which says once jurisdiction is invested in the Court of Appeals, the NLRB doesn't get it back unless the Court of Appeals specifically remands it back to it, or in its opinion, indicates an expectation that the NLRB will resume processing the case. That's what the Court has said in the Fourth, the Eighth, the Ninth, and the D.C. Circuit as to what that statute means. In this case … But when we vacated the order, it was because it was not an order of the board. Is that right? Well, you vacated an order in compliance with an order from the Supreme Court, Your Honor, in null canning, finding that the board was improperly constituted. Right, but it wasn't an order of the board because, of course, you know, the board wasn't properly constituted. It wasn't validly appointed. And so it seems to me it was as if that order had never ever been entered. So why wouldn't a properly constituted board not have jurisdiction over the hearing officer's order at that point? Well, Your Honor, I think it's because the board order is an order of the board. I think if I follow your logic, it would be as if you all never had jurisdiction to decide your case in the first place. The Supreme Court never had jurisdiction to decide null canning. But you did. And once the order was issued by the board, you then did acquire jurisdiction when the record was transmitted to you. And when you did that, the board lost jurisdiction. And the only way for them to re-decide it is if you gave it back. They asked you to give it back. But it wasn't really a board. It wasn't really the board because it wasn't properly constituted. Oh, well. I don't know. Yes, Your Honor, I understand. But, again, the case did proceed. You just mentioned what I was trying to figure out because they moved to vacate and remand. And our order was the motion to remand is denied. Yes, Your Honor, that's right. So it never went back. That's right, Your Honor. You all refused to let it go back. I assume you're arguing it's over. Yes, sir, it is. I have one side question. Is this coal mine still open? No, sir. How long has it been closed? Three years. And when was Waller fired? I think he was terminated in 2011. He was actually put back to work until the mine closed sometime thereafter. Oh, is that right? Yes, sir. So, candidly, what we're talking about here is the amount of back that you're on. But I'm sort of curious. Here we are. Yes, sir. And I understand when I thought he went back to work, and I assume there was some mitigating issue in all of that, that then now we're here arguing about something that was never remanded. Yes, sir, Your Honor. Most of the other cases that we looked at, at least, did have a remand. That's right, they did. And, candidly, the reason I'm before you today is because you all chose not to remand it. That was the Eighth Circuit that took that decision. The Eighth Circuit, Your Honor. Well, they've taken two positions, Your Honor. There's an earlier case in Eighth Circuit that was not mentioned by the Whitesell Court. Yes, sir, the Whitesell Court, they didn't explain it. They didn't say why. They simply said, well, we intended for the Board to take this case back all along. That's what it says, Your Honor. But it doesn't cite. I know you challenged that case. Yes, sir. So, then, would we create a circuit split? Is that the only other circuit that's taken that position? As far as I know to date, it is, Your Honor. That's the only other circuit that has. So we would have to be in conflict if we did not follow that analysis that the Eighth Circuit took. I appreciate that you questioned their analysis, Mr. Robertson. You're right, you would. But, Your Honor, you would be in the majority, in my view. You'd be with the Fourth, the other Eighth Circuit, the Ninth, and the D.C. Circuit. Well, what were the orders in those cases? The orders in those cases were there was not a remand. The Board chose to re-decide the case or try to make additional rulings in the case. Now, to be fair, those cases are cases where the merits had been decided. They have not been decided here. That's a distinction from our situation. It is a distinction, Your Honor. But the thing I would point out to you is in none of those cases did the Court note such a distinction, nor did the Supreme Court note such a distinction in the Eagle Pitcher case. By the way, none of those cases were cited by the Eighth Circuit in Whiteside. In none of those cases did the Court say, well, our rule that we're announcing today about whether the NLRB has jurisdiction to re-decide the case, that only applies when a decision has been issued. They never said that. But why would Eagle Pitcher even apply here? You know, you argued on page 27 of the opening brief that Eagle Pitcher teaches that, and I'm going to quote, if the Court of Appeals believes a portion of the Board's order remains viable following its denial of enforcement, it is incumbent on the Court of Appeals to say so. But there was no Board order at all. So there can be, it seems to me, no portion of an order. In other words, why would Eagle Pitcher apply when we ruled that the initial order was a nullity? We didn't rule on the Board's order because there was no Board. There was no viable order. Well, Your Honor, I understand your point. I would say to you, though, that every other circuit that has considered this whole array of issues relating to null canning, they have not found, none of them, that the Board's order was a nullity and therefore didn't exist. They've all found it existed, but they found that it was improbably granted or improbably ruled upon by the Board. The reason Eagle Pitcher applies here is because you all issued a final decision which says, this Court's order is final and the case is closed. It's not a two-part order. It's not a two-part mandate. And what Eagle Pitcher says is exactly that. Your decisions with respect to reviewing NLRB cases are not dual in character. They're singular in character. You denied in two percent to the Board. The only circuit case addressing the very same scenario that we have here, where the panel neglected to expressly remand, the Eighth Circuit found that the Board did have jurisdiction. And we certainly would be splitting from the Eighth Circuit if we agreed with you. Your Honor, you would be, although I would say there was an earlier case in the Eighth Circuit which was not cited in Eagle Pitcher where they found the opposite. But I acknowledge, Your Honor, the difference is, a difference is that the merits decisions were rendered. But the courts, including the Supreme Court, who have opined about what 10E means, what the statute means, how it allocates jurisdiction, don't distinguish on whether the merits were decided one way or another or for whom. The courts are interpreting what the statute says. And it says when you get jurisdiction on the Court of Appeals, it's exclusive. And the only way for the Board to get it back is unless you give it back, either by directly remanding it or by expressing in your opinion an intention for them to take it back. You didn't do that here. When they went forward with it, whatever they did, with no remand, there was new members of the Board, weren't there? Yes, Your Honor. It was properly constituted when it was decided by the Board on, when it decided it on its own, yes. And then, I don't know, did they adopt what was previously decided or did they start anew? They adopted what was previously decided, Your Honor. I don't want to short-circuit that. Their opinion says we reviewed it and we agree with it. And then they adopted it. Could we talk about the merits for a minute? I would love to, yes, Your Honor. On the merits, the hearing officers simply seem to have believed Waller over Kerner on what really happened. And how can we reverse a credibility finding like that at this point? You know, in Waller's version, his truck was already stopped. He's simply unloading. And he disagreed with an order to stop unloading only after he asked why the order was given. Why is that a safety issue? Well, Your Honor, let me start with your original premise. You don't have to decide between Kerner and Waller. You have to decide what Benner thought and what Benner decided. He's the one that decided whether to fire the guy. And in your court, whether it's Weiss, Sears, Roebuck, or otherwise, you have said, it's not a question of whether the employer, in quotes, has anti-union animus. It's whether the decision-maker has anti-union animus and whether he applied it in making the decision. Now, the LRB says you did not preserve this argument. Where in the record did you preserve the argument before the board that the anti-union animus of supervisors who committed unfair labor practices couldn't be imputed to Benner and Grossman, the supervisors? Your Honor, it's inherent in the burdens of proof by the parties. That's what the case was all about. The whole evidentiary case was whether or not the company was motivated by anti-union animus in the decision. And the question was that the judge failed to answer is whether the decision-maker was. It's not a question of preserving that judge. That's what the case is about. That's what right line requires. That's what the evidence was put in for. Well, Ms. Beard is going to have to help us with that, I guess. Your Honor, I would say two things, if I could, about the merits. One, the motivation ascribed by the ALJ is candidly ridiculous. The motivation is that the employer fired this guy to win an election. I've been doing this for 40 years. I know employers do those things sometimes. But this is not one of them, and here's why. He wasn't fired before the election. You don't fire a guy to win an election after the election occurs. That's what happened here. The motivation decision by the ALJ is flawed. Two, unless you prove Benner had anti-union animus, and that's not the same as knowledge of Waller's conduct. This court made that clear in the Chicago Tribune case. Knowledge of union activity is not the same as anti-union animus. They had to prove and the judge had to find that Benner was motivated by that animus, had it, and was motivated by it when he decided to fire this guy. There's no proof in this record that that's the case. Thank you, Mr. Robertson. May I have some time on rebuttal, Your Honor? Well, you had reserved five. We've asked extensive questions, so I'll certainly give you three minutes for rebuttal, Mr. Robertson. Thank you, Your Honor. Ms. Beard. Good morning. May it please the Court. I'm Heather Beard for the NLRB, and I'll first address the threshold issue of the Board considering the case anew, and then I'll move on to the merits of the company's unfair labor practice against Mr. Wade Waller. So to begin, the threshold issue is that the Board did reasonably construe this Court's mandate in light of its judgment and opinion to allow the now properly constituted Board to resolve the underlying unfair labor practices. Indeed, as this Court stated in New Process Steel after it was remanded from the Supreme Court, the parties are entitled to a decision on the merits of their case by a properly constituted panel of the Board prior to appellate review. Now, I recognize as my opponent has stood up here and talked about the fact that there is no explicit remand from this Court. Indeed, that when this, when the Board asked for a remand, what happened was this Court said, motion for remand denied. We do not deny that. However, it is not required that this Court explicitly remand a case in this procedural posture, and that is the teaching not only of Whitesell, but of the distinction with a big difference of Eagle Pitcher and the other cases cited by my opponent. All of those cases were cases in which a Court had issued a decision on the merits, determining that the Board does not get a second bite at the apple after they've already gotten review on the merits from a Court. However, here, the Board, as this Court stated in new process, did not get what it was entitled to, nor did the parties, which is with a properly constituted Board, a decision from the Court on the merits. And there is nothing, as we point out in our brief in Section 10e of the Act, that precludes the Board from deciding the case anew without an explicit remand. Indeed, we disagree, as we said in our brief, that language in 10e means the Board can't decide a case anew. The meaning of 10e is that once this Court has issued its mandate and relinquished jurisdiction, there are still, as Judge Roeper pointed out, there are still proceedings that are pending at the Board, and there is nothing precluding the Board, now properly constituted, from deciding the case anew. We do have Whitesell as an Eighth Circuit case, and we stand on that reasoning. Now, in Whitesell, my opponent complains that W.L. Milner, an earlier case in that circuit, isn't cited. But as we point out in the brief, that's not required. That case is eminently distinguishable, as are all the other cases they cite, where there has been a decision on the merits by a validly constituted Board. Indeed, the briefs in front of the Court in Whitesell, from both the NLRB as well as the other side, did mention all of those cases, and as the precedent that we cite in our brief points out, that is to be considered then that it was an issue before that Court. So we believe the Whitesell decision, which is the closest on the issues that we have here, along with the interpretation that the Board did of this Court's mandate, was one that was, as the law says to construe mandates, reasonable and in the interests of justice. Now, the Supreme Court did not issue an express remand in Noel Canning, but I see, you know, I saw from the subsequent history of the case that the Board then took exactly the same action in Noel Canning that it took here, considering the case anew and entering an order. I see that there was no subsequent petition for review or application for enforcement, and I'm wondering, is that because the employer simply complied with the Board's order? In other words, the employer simply accepted that the Board had jurisdiction and complied? No, Your Honor. In fact, that isn't correct. Indeed, I'm well aware, because I'm the attorney handling that, there has been a petition for review in Noel Canning. Oh, am I lucky. So am I. No, I mean, go ahead. So, indeed, in Noel Canning, an argument, in fact, this issue is now pending, not only in Noel Canning, but in the Fourth Circuit. I had the pleasure of engaging in an argument with Mr. Robertson in early September in a case called Huntington. It's pending in the Fourth Circuit in that case and another one called Enterprise. These are the four cases where there was not an explicit remand that was issued after Noel Canning was decided. Yes, so that is still pending. Was there an explicit denial? Are you aware of any other case in this circuit after the Supreme Court's Noel Canning decision where the panel did not grant the NLRB's motion to remand? Was ours the only panel to deny the motion? I mean, I assume we had a number of these cases pending. Sure, Judge Robertson, I'm going to answer Judge Manning's question really quickly. First, you asked me whether there was an explicit denial of remand in any of the other cases in the Seventh Circuit. Not that I'm aware of, but what there was, there was a case that used to be linked with Big Ridge that you all heard called FTS Proppins, if I'm pronouncing it correctly, and that case was also given the same procedural handling once Noel Canning came down by this court, whereby an order was issued, a final judgment was issued, stating that the order was vacated based solely on the recess appointment issue. And that was a case, Judge Rovner, where it eventually, the union withdrew the charge, I believe, and so that case is no longer at issue. But in terms of post-Noel Canning, the Seventh Circuit, like other circuits after New Process, quite frankly, had some cases where the word remand was used and others where the word remand was not. And as the White Cell Court found and as the Second Circuit found in Domsey, which followed New Process, the word remand is not necessary in this particular procedural posture to get the case back in front of the NLRB to decide anew when there has not been a valid final decision of the board. And I'm happy to answer any other questions on the threshold issue or otherwise I'm happy to move to the merits. Okay, so the remaining issue in this case is whether or not substantial evidence supports the fact that the reason why Big Ridge fired Mr. Wade-Waller was because of his union activity and not because of what they unreasonably believed to be a safety violation. So my opponent initially made some statements with regard to the merits that I'd like to address. And the first is that the key, he said, is what Mr. Benner believed as the official who decided. I also believe that Mr. Gossman was also involved in the termination. But there is evidence that Mr. Gossman and Mr. Benner had animus toward the union in this case. And this court's well aware, you don't need to have direct evidence, but rather circumstantial evidence of motive is very important. And here, not only did Mr. Benner himself participate in what can only be called a cursory investigation by telling Mr. Gossman to terminate Mr. Waller prior to actually conducting such an investigation, basically giving him the green light to talk to him and then fire him, when you take a look at the fact that if this was a safety concern, there would presumably have been more questions asked by Mr. Gossman and others in the mind of Mr. Korner as to what he meant when he said that he was flagging off Mr. Waller, because the credited testimony demonstrates, and even Mr. Korner testified, that Mr. Waller was not in the process of moving in his Ram car and that the dispute was over dumping coal, which has not been alleged to be a safety violation. So while I agree with my opponent that it's very critical what the decision makers believed, you look to, as the board found, the cursory investigation that was done, as well as the disparate treatment of other individuals in the mind who had engaged in things such as threatening others that they would bring their gun, and indeed involving others throwing folks to the ground, and they were not terminated. In fact, in many cases, not even disciplined at all. Those combined to produce what the board reasonably found is circumstantial evidence that the termination of this extremely strong and strident union supporter was not due to his any alleged safety violation. My opponent also raises the issue of the timing that this took place after the election. So I'd like to address that often when we have a case like this, when a company seizes on an opportunity to terminate someone who was openly in support of the union, that decision turns on after there's some conduct that happens, or which timing no one has control over. Here, we don't just have retaliation as the motive, but the election objections were very much going strong at the time that this happened, and the company was collecting statements so that it could challenge the election, which it just lost in a very close vote. And so as we point out in our brief, just because this happened the day, I believe, of the election, and he was terminated a week later, does not negate any inference that can be drawn from the fact that this was during a very heated union campaign in which the company demonstrated animus toward Mr. Waller. So I believe there is ample evidence on this record that the board looked at with its very deferential standard of review and expertise in determining motive to show that the company did violate Section 883 of the Act by terminating Mr. Waller for his union activity and not for what it believed to be a safety violation. Well, do they believe Korner at all, or is he just irrelevant? I mean, he was the one who was threatened when he said Waller wouldn't stop and was going to disregard him the whole time. I don't know what goes on in the bottom of the dark coal mine, even less than I know about technology. But at the same time, it seems that this was kind of a threatening situation, and I guess they just didn't believe him? When you say, Your Honor, you mean the board or the judge? Yeah. The judge did say that it did not credit Mr. Korner that he felt threatened. However, the company, when they did believe that Mr. Korner felt threatened, and the company, however, where we see the animus here is not that necessarily Mr. Korner shouldn't have felt threatened, but that what he was talking about was not something that was proved by the company because there is a very big difference in whether Mr. Waller was stopped at the time and the dispute was over the dumping of the coal, which is what Mr. Korner testified, or whether he was continuing driving and thus almost running him over to kill him. And if the company had inquired on its investigation of Mr. Korner specifically what he meant when he said that, it would indicate that the company did believe that there was a safety violation. The company didn't, nor did it prevent Mr. Waller for days after this occurred, from coming to work in the mine. I think that's important as well, to belie any sort of safety violation that the company thought. Had they thought that Mr. Waller had threatened to run over and kill Mr. Korner, it would be odd that Mr. Loritz, the supervisor involved who heard of this, would have allowed Mr. Waller to work days he wasn't scheduled over that weekend in the mine. Mr. Korner supposedly had subsequent problems as a result, but the thing that's frustrating here is not only is the coal mine closed, and also Waller was rehired, and they're sending something back that we thought wasn't going to be remanded. I'm perplexed. Where do you guys go from here? Well, where we go from here is, my understanding is that as Mr. Robertson said, there's back pay, significant back pay that would still be. Does anybody have any money? Does anybody have? That's for a matter for compliance, actually. Our board proceedings are bifurcated, and so for compliance we would determine how much money is owed to Mr. Waller for this violation. But in terms of this court and your first comment about intending the case to be over without the remand, we would argue respectfully that in the context of your mandate and what you said in the opinion as only being on the issue of the recess appointments, that this court did not in fact intend to never hear this case again. That would be contrary not only so far to all the courts in the country after board orders were invalidated, but it would also go against the teaching of this court in its new process decision stating that the parties are entitled to a decision from a valid board on the merits of their case before there is to be appellate review, and that's exactly what the parties are entitled to here. And that is why we believe that the proceedings, that the board was entitled to look at the proceedings anew in this case, and that Mr. Waller's termination was unlawful under the Act. Thank you, Ms. Drew. Thank you. Mr. Robertson. Thank you, Your Honor. If I could start with the merits. The issue is Thomas Benner. The issue is not Lawrence. The issue is not Gossman. The issue is what Thomas Benner thought and what Thomas Benner did. There is no evidence in the record, and Ms. Beard didn't give you any evidence in the record, that Benner had anti-union animus. The judge didn't find that, nor is there evidence in the record that he was motivated by anti-union animus, and the judge didn't find that. According to cases from your court, without that the board has failed to meet its burden of proof in this 8A3 discharge case of Waller. The question of safety and how all that comes up, the question again is what did Benner believe? Benner got eight written statements. He interviewed the HR director who gave him the facts. He reviewed the facts, and he testified what bothered me the most was the safety issues underground regarding Waller's conduct with respect to Kerner, and it was not sitting there at the dumper. It was Waller saying, I am not going to obey the flagging of Kerner at any time all night long, and that is in the transcript. It's in the record, and Benner believed that, and Benner said the reason that's important is I had a fatality here not a year ago while a guy driving the same vehicle in the same place doing the same thing. Emsha investigated it, found the company guilty, and installed a new job that was Kerner's job to be the traffic cop to make sure that people like Waller driving 30-ton trucks that are 10 feet long going 20 miles an hour underground don't run over somebody. Benner knew that. That's what motivated Benner, and nobody has laid a glove on Benner for that being his reason. Therefore, in this court under the Weiss case and the Sears Roebuck case, they haven't proved their burden, and again, making speeches, according to this court, making speeches is not equivalent to anti-union animals, and I cite this court to its own opinions in Carey Companies versus NLRB 35th 3rd 922 where the court made just such a finding. As to the question of whether or not the remand, whether the court had jurisdiction, I can only say, one, the court did not remand the case, and it was asked to do so. Two, when the board asked the court to remand the case, it said, and I think this is telling, it said it wanted the case to be remanded, quote, so that the board may promptly exercise jurisdiction over the matter. That's a statement from someone who says, I don't have jurisdiction yet. Give it back. That's what 10E requires, and that's all we're saying in this case, and that's why we say we didn't have jurisdiction to issue the case, issue the decision. Thanks very much. Thank you, Mr. Robinson. Thank you, Ms. Beard. Case is taken under advisory.